# DILLON DECLARATION

# EXHIBIT D

# Secretive justice:

## How Georgia colleges handle rape on campus

BRANT SANDERLIN / BSANDERLIN@AJC.COM

Students at Agnes Scott College show their support for sexual assault victims as part of a national day of action, "Carry That Weight Wednesday" in October of 2014.

Georgia colleges tread where prosecutors won't, but some claim secret tribunals unfair to the accused.

BY SHANNON MCCAFFREY (HTTP://WWW.MYAJC.COM/STAFF/SHANNON-MCCAFFREY/) AND JANEL DAVIS (HTTP://WWW.MYAJC.COM/STAFF/JANEL-DAVIS/) | THE ATLANTA JOURNAL-CONSTITUTION



HYOSUB SHIN / HSHIN@AJC.COM

Oglethorpe House on UGA campus in Athens. At Georgia's colleges, punishing alleged sex offenders often falls to the school itself. More than a dozen students have been expelled and suspended for sexual assault at the state's larges universities. But some who have been punished say the secretive system denies them their constitutional rights.

On an August night in 2012, a male University of Georgia student and a female friend from class were texting. She was drinking at Whiskey Bent, a downtown Athens bar. He invited her to celebrate his birthday at a party in his dorm room.

"I'm honestly so far gone right now," she texted back according to court records. Still, she agreed to stop by. She texted him a smiley face when she reached Oglethorpe House to let him know she was outside. But entering his room, she found they were alone. His friends, he said, had departed, a police report said.

The pair had sex. On that they agree. But while he said it was consensual – she even helped him remove her shirt – she said she was so drunk the room was spinning and was incapable of consent, according to a University of Georgia police report.

Athens-Clarke County District Attorney Ken Mauldin declined to prosecute, saying he didn't think he could win an indictment, records show.

But the case had a postscript. Documents obtained by The Atlanta Journal-Constitution through an open records request show that more than two months after the encounter, UGA decided to expel the freshman male student. The AJC is not naming the student because he was not charged criminally.

A three-month AJC investigation into the secretive world of campus tribunals found that Georgia's largest universities are pursuing cases that prosecutors won't touch, offering some accountability for a serious category of student misconduct. But the newspaper also found that campus justice comes with steep trade-offs.

Procedures vary widely and are often poorly understood by both the accused and the accuser. Students, and sometimes their parents, expect the strict rules of a court of law, but instead encounter a looser system where cross-examining witnesses is sharply curtailed and the burden of proof is far lower.

Several students, including the UGA freshman, claim the proceedings in place are deeply flawed and violated their rights to due process. While they haven't gone to jail, an expulsion, or even suspension, can have dire and long-lasting consequences.

Over a five year period, the AJC found, Georgia's five largest public universities processed 43 sexual misconduct complaints and held the accused responsible about half the time.



'While some may be doing it to check a box, others are doing it because it's the right thing to do and now they have the federal support to make sure it gets done.'

Jennifer Bivins, with Georgia Network to End Sexual Assault



'It's a sham. These young men are being denied very basic protections so that the schools can score political points.'

Tom Morgan, former DeKalb County district attorney

Findings of responsibility varied greatly. The students accused at Georgia Tech were almost always found responsible, while the number was fewer than a third at UGA, the school with the highest number of cases and enrollment.

Most held responsible were suspended from school. Fewer than 10 were expelled, representing about one in five of all the complaints.

Over the same time period, 90 reports of rape and sodomy were recorded at those same five schools; none resulted in a criminal prosecution, according to an AJC analysis published in December (http://www.myajc.com/news/news/at-georgia-colleges-allegations-of-rape-but-no-pro/njWdJ/).

The outcomes the AJC found at Georgia colleges are due at least in part to the lower standard of proof used by campus judicial bodies; cases are decided on standard of more likely than not, also known as a preponderance of the evidence, the bar set in most civil trials. A far tougher standard of beyond a reasonable doubt is used in criminal trials.

# Campus tribunals by the numbers

Over the past five years, university tribunals have handled more than 40 cases of sexual misconduct at six of the state's largest universities. Students have been held responsible half the time, and one in five complaints filed resulted in expulsion. Emory, a private university, provided the number of complaints it had received but would not say how the cases had been resolved.

Source: University documents

*Campus tribunals by the numbers (https://infogr.am/the_secretive_world_of_campus_tribunals) | Create Infographics (https://infogr.am)*

But the schools have also been spurred by increased pressure from the federal government. Since 2011, the U.S. Department of Education has ordered colleges to adopt tougher sex discrimination measures or face the loss of billions of dollars in financial aid.

At some Georgia schools, policies and procedures for sexual misconduct have undergone several updates in as many years, suggesting the way they tackle sexual assault is still very much a work in progress.

Still, advocates for sexual assault victims praise the schools for tackling cases prosecutors often will not and doing so in closed-door proceedings that generally respect the privacy of victims.

"While some may be doing it to check a box, others are doing it because it's the right thing to do and now they have the federal support to make sure it gets done," said Jennifer Bivins, president and CEO of the Georgia Network to End Sexual Assault.

But lawyers for the accused say colleges have gone too far to shield victims, trampling their clients' basic constitutional rights in order to appear tough on campus rape.

"It's a sham," said J. Tom Morgan, the former DeKalb County district attorney who has represented two men punished by Georgia Tech for sexual assault. "These young men are being denied very basic protections so that the schools can score political points."

The AJC's reporting shows that within the federal guidelines, Georgia schools have crafted judicial systems to handle sexual misconduct cases that are often quite different from how they handle other student offenses. And even within the procedures set up for sexual misconduct cases, there are wide variations. At some schools, panels with at least one student representative hear a sexual assault case, while in others a single university official investigates and decides the outcome without any formal hearing at all.

In Georgia, the Board of Regents is poised to intervene. A special task force has launched a review (http://www.myajc.com/news/news/state-regional-govt-politics/georgia-college-system-to-review-safety-sexual-ass/ng6KR/) of how colleges handle sexual assault and other crimes, and it plans to outline recommendations next month.

### Barred from class



University of Georgia police patrol Oglethorpe House. A three-month AJC investigation into the secretive world of campus tribunals found that Georgia's largest universities are pursuing cases that prosecutors won't touch.

Campus judicial proceedings are intensely secretive. The AJC filed multiple open records requests to obtain even basic statistics on the number of complaints and the outcomes. Most records from the proceedings are shielded by federal education privacy laws even after a case has been resolved.

One Emory graduate student accused of rape provided the AJC a window into the opaque process at that school. The student was ultimately cleared of wrongdoing and was not named publicly by Emory so the AJC agreed not to identify him. Many details of his account of the incident and its aftermath are backed up by documents, emails and text messages reviewed by AJC reporters.

After he was accused, the student was essentially barred from campus for an entire semester. He was required to monitor most of his classes online and, for the one class he was permitted to attend in person, instructed to enter and exit from a back entrance, stipulations designed to ensure he didn't encounter his accuser.

"I would be walking with friends and then pretend I had a phone call or something because I couldn't walk in the front door with them," he said.

The route through Emory's judicial process took four months – twice the 60-day time frame urged by the Department of Education – and during that time the student said he felt as though he had already been judged guilty.

His ordeal began on March 1, 2014. Text messages show the student invited a female friend to come to his apartment to watch a movie, and the exchanges included banter about sex. It was around midnight and the two had been at the same social event.

Both agree that once they arrived, sexual foreplay led to intercourse, and that he stopped less than a minute later when she asked him to. The young woman told him she wanted to go home. He said said it was late and encouraged her to sleep in his bed. She said later she felt as though he kept her from leaving. They both agree he went to the living room and slept on the sofa. The next morning he took her home. Text messages the two exchanged the next day were friendly. He talked about struggling to study and she mentioned taking a run.

> Glossary of terms
>
> **Preponderance of Evidence:** The standard of proof federal officials have told schools they should use in adjudicating sexual misconduct cases. The standard — which is used in most civil cases — sets the bar at "more likely than not." A tougher standard of beyond a reasonable doubt is used in criminal cases.
>
> **Responsible/Not Responsible:** Unlike criminal proceedings, where a person is found to be guilty or not guilty, students adjudicated in a campus proceedings are usually found responsible or not responsible.
>
> **Title IX:** Part of the Education Amendments of 1972, this federal legislation protects people from discrimination based on sex in education programs or activities which receive federal financial assistance. The U.S. Department of Education maintains an Office for Civil Rights to enforce Title IX. The Office of Civil Rights requires that each school must designate a Title IX officer.

About one month later, the student received a handwritten note from the woman.

"What you did to me was date rape," it said. "I told you no, multiple times. You went for it anyway."

By August 2014, the woman had filed a complaint with Emory, triggering an investigation.

On Sept. 19 the graduate student received a note from Emory's Title IX coordinator, the official who handles sexual assault complaints.

"There is sufficient information to support charging you with violating the university's sexual misconduct policy, specifically non-consensual sexual intercourse and coercion," the email said. "Based on all available information, I find it is more likely than not that you violated the sexual misconduct policy."

"I was terrified," the student told the AJC.

He pleaded not responsible to the charges, hired an attorney and requested a hearing. Nearly two more months passed before a hearing took place. During that time he remained effectively banned from campus.

The student said he lost nearly 20 pounds and struggled to keep up with his coursework.

"I passed, but my grades definitely suffered," he said.

On Nov. 14, he said he walked into the hearing without having ever being informed of the specifics of the charges against him. The only material he had to go on was the young woman's note, he said. A three-member panel made up of one faculty member, one professional staff member and one student heard the case. Both sides offered an opening statement. The young woman was not present and was piped in by telephone. She had a panel member read her statement. In it, she explained that she had not said no during the physical encounter but had told him earlier in the evening that she didn't want to have sex.

The two were each asked questions by the panelists but weren't permitted to question each other. There were no other witnesses.

The panel reached the unanimous decision that the male student was not responsible. The young woman appealed and on Dec. 19 a three-person appeals panel convened by the university upheld the finding of not responsible, clearing the student to return to campus.

Emory declined to comment (http://www.myajc.com/news/news/state-regional/emory-among-colleges-in-federal-sex-assault-invest/nfnCn/) on the specifics of the case but provided information on its sexual misconduct policy, which states that campus officials have the authority to impose interim restrictions that can include exclusion from areas of campus, changes in academic/course schedules and limiting participation in certain events.

"Interim measures should not be construed to suggest that any decision has been made about the merits of the cases," the policy states.

Emory gave the AJC statistics on how many sexual misconduct complaints it adjudicated over the past five years – 11 cases – but did not provide data on how they had been resolved, citing student confidentiality.

"You have to trust us," Ajay Nair, Emory's dean of campus life, told the AJC.

The woman who filed the complaint did not return repeated calls and emails seeking her side of the story.

### Justice, in secret



VIDEO BY HYOSUB SHIN EDIT BY ELISSA BENZIE

Conflicting opinions over how to handle cases such as the one at Emory underscore a larger question: should schools police sexual misconduct at all, or should the matter be left to criminal courts?

That idea flared briefly in Georgia earlier this year when state Sen. Ronald Ramsey, D-Lithonia, introduced legislation (http://www.myajc.com/news/news/local-education/legislators-table-bill-on-campus-rape-investigatio/nkH6h/) that would have required all campuses to report incidents of sexual violence to police. The effort collapsed in the face of vigorous lobbying against it by the university system and advocates for victims of sexual assault.

Advocates have long argued that sex assaults on college campuses are vastly underreported, a position backed up by numerous surveys. Victims are frequently ashamed. Memories are often clouded by alcohol. (http://www.myajc.com/news/news/a-tale-of-two-sexual-assault-victims/njWhr/) Recently, however, there has been a rise in reports of campus sex assaults in Georgia and elsewhere. (http://www.myajc.com/news/news/at-many-ga-colleges-reports-of-sex-assault-rise/nhbB9/) Many schools have argued that the growing numbers are the result of a more proactive push to encourage victims to come forward, as well as to count more anonymous reports made to counselors and health care workers.

Those efforts dovetail with an aggressive campaign by U.S. Department of Education's Office of Civil Rights to get schools to do more to protect students. In 2011, the office issued detailed new guidelines outlining schools' responsibilities. Some of the requirements have been in place for decades under Title IX, the federal sex discrimination law. But the message from Washington was clear: schools need to do more.

More exclusive content from AJC staff

Find out where sexual assaults occur at nine of Georgia's largest colleges on our interactive map. (http://www.myajc.com/news/campus-rape-maps/)

Read (http://www.myajc.com/news/news/at-georgia-colleges-allegations-of-rape-but-no-pro/njWdJ/) why prosecutors never prosecute sexual assaults at Georgia colleges.

The difficult decision to report a sexual assault: Two students share their experiences. (http://www.myajc.com/news/news/a-tale-of-two-sexual-assault-victims/njWhr/)

Campus judicial tribunals have stepped into the void. The panels originally sprang up to handle academic infractions like cheating and plagiarism as well as other misconduct matters, like underage drinking and destruction of campus property. But over the years experts say, their mandate has grown, mirroring the changing demographics on college campuses. As schools have admitted more women and ethnic minorities, campus justice panels were seen as a way to resolve the conflicts administrators believed would naturally arise.

"They have taken on greater power in a broader area of campus life," said Harvey Silverglate, author of the book "The Shadow University," which examined campus courts.

School officials say the campus justice systems fill an important need, especially in sensitive sexual assault cases where secrecy can be a prerequisite to victims coming forward. The cases are dealt with privately, the process is less adversarial and burden of proof is lower.

Lynn Durham, an assistant vice president at Georgia Tech who chaired a campus task force on sexual violence, said many victims who use the campus system simply want to be able to continue their education without the fear of running into their assailant.

"They don't want to see him in their class or in the dorm room...They are trying to get their education. They don't want that around them all the time. So, I think they are willing to go through the campus process even if they aren't willing to go through the criminal process."

Georgia State's dean of students Darryl Holloman agreed.

Student judicial proceedings "shouldn't take the place of criminal courts," he said. Still, he explained, there is "a level of conduct that may fall short of criminal, but still isn't something we want to see on our campus."

### Procedures vary widely

Critics, however, contend some of the very same attributes that make the process attractive to victims makes it unfair to the accused.

Lawyers who have handled cases in Georgia say the proceedings don't allow for a meaningful cross examination to drill down into what happened. Schools rely on panelists or university officials to ask questions. Lawyers are allowed in to proceedings but can only talk to their clients. For the most part, students cannot question each other. They can suggest questions to the panelists who can then choose whether to pursue the line of inquiry or not.

UGA and Georgia Tech don't even use live hearings but compile notes from separate interviews with the accuser, the accused and any witnesses. The two schools have also abandoned panels to hear cases and rely instead on a single, highly-specialized individual to investigate, decide responsibility and impose the sanction.

Schools that use panels – Emory, Georgia State, Georgia Southern and Kennesaw State – all construct them differently.

At Georgia Southern and Kennesaw, student panelists are excluded from sexual misconduct cases. Despite federal guidance not to include students on panels, Emory and Georgia State still use them.

A fail-safe measure is supposed to be that either party may appeal. At Georgia's public universities the appeal may go all the the way to the Board of Regents. But those appeals are hard to win. Records obtained by the AJC show that since 2010 the Regents has heard six appeals of campus disciplinary actions in sexual misconduct cases and upheld the sanction in each one.

Georgia Tech is the only one of the schools examined that now has a mandated penalty – expulsion – for students found responsible for rape. That came in the school's most recent rewrite of its campus sexual assault policy last year. The school – where male students still outnumber females by about a 3 to 2 ratio – had been under scrutiny after an email surfaced at a fraternity calling women "rapebait".

| School | Notice to Parties | Investigation | Deadline | Hearing | Panel Hearing or Individual | Possible Sanctions | Appeal |
|---|---|---|---|---|---|---|---|
| Emory (http://policies.emory.edu/8.2) | Parties are notified via email. They are asked to meet with the Title IX Coordinator for Students about an alleged violation. | Two trained investigators investigate the allegations. The Title IX coordinator reviews findings with the parties and decides whether to pursue. | In most cases, investigations will be completed in 60 days. | Three-member panel of a student, a faculty member and a staff member determines outcome. Chairperson recommends a sanction to Title IX coordinator who determines the punishment. | Panel, including one student | Probation, Suspension, Expulsion | The panel submits recommer to the Title Coordinat makes the determina |
| Georgia Southern (http://deanofstudents.georgiasouthern.edu/conduct/wp-content/uploads/sites/3/Student-Code-of-Conduct-for-2014-2015.pdf) | Both parties are notified by email or phone. What they are told may vary. Usually, the first notification is to set an appointment to meet with the dean's staff. | Investigations conducted by one of two coordinators of student conduct who also sit on the panel hearing the cases. New procedures are planned. | No set time limit for investigations. The goal is no more than 60 days. | The parties can request a hearing by an administrative officer or by a panel composed of faculty and staff members. | Three-member panel. No students may serve. | Probation, suspension, expulsion. | Can appe the vice president student aft university president Board of Regents. |
| Georgia State (http://codeofconduct.gsu.edu/files/2013/03/2013-14-Student-Code-IV.D.-Sexual-Misconduct-Policy.pdf) | The parties informed by phone call and/or an investigation letter. | Conducted by Title IX investigators trained by the school. | None noted in school policy but school officials try to adhere to federal guidance of a 60-day timeline. | The parties can choose an administrative conference conducted by the Dean of Students. Parties may also choose a three-member panel of one faculty member, one staff member and one student. Proceedings are recorded and cross-examination is allowed. | Parties choose either a school administrator or a panel that includes one student. | Probation, suspension, expulsion. | Can appe the vice president student aft then the university president then the B of Regents |
| | | Involved parties, including | | No formal hearing. Evidence and interviews are | | | Either part appeal to |

| School | Notification | Investigation | Timeline | Hearing | Decision-maker | Sanctions | Appeal |
|---|---|---|---|---|---|---|---|
| Georgia Tech (http://www.policylibrary.gatech.edu/student-life/student-sexual-harassment-misconduct-policy) | Both parties contacted via email. | witnesses, are met with individually to share their accounts with a Title IX investigator. The interviews are compiled into a full report. | The goal is to complete the process within 60 days. | used by the investigator who then makes a decision. Both parties may review and respond to the report before a decision is made. | Individual | Probation, suspension or expulsion. Mandatory expulsion in cases of rape. | of student reviews as of a three-member p The appea then go to university president a then to the Board of Regents. |
| Kennesaw State (https://web.kennesaw.edu/scai/content/ksu-student-title-ix-sexual-misconduct-policy) | Both parties notified by email. Notice outlines the policy violations and summarizes the incident. Before any formal action, the accused will be told the name of the accuser. | Conducted by Title IX investigators. | The goal is to complete the process within 60 days. | Students may agree to informal resolution through the Title IX Office. Otherwise, a hearing before a panel of three follows an investigation. Parties may make statements but are discouraged from direct questions. Panelists may question witnesses. | Three-member panel of faculty and/or staff and a chairperson from the Office of Student Conduct. No students may serve. | Expulsion, suspension, disciplinary probation or suspension from on-campus housing. | Either part appeal to Dean of Students, the univers president a then the B of Regents |
| University of Georgia (https://eoo.uga.edu/policies/non-discrimination-anti-harassment-policy) | Parties notified of complaint by email. They are also told to contact EOO for more information and to set up an appointment. | A singe investigator from the EOO office looks into the allegations and also determines the outcome and sanction. | A decision within 60 days or EOO will advise the parties that more time is needed. | No formal hearing. Evidence is disclosed during the investigation to all parties who are permitted to challenge the evidence through the investigator. Proceedings are not recorded. Parties may challenge witnesses through the investigator. | Individual. | Suspension or expulsion. | Either part appeal to university president a then the B of Regents |

## 'No due process whatsoever'

Campus resources for sexual assault victims

**Emory University: (respect.emory.edu)** Emory University Respect Program, (404) 727-1514. (tel:(404) 727-1514)

**Georgia Southern University: (studentsupport.georgiasouthern.edu/counseling/crisis/sexual-assault-response-team)**
Sexual Assault Response Team, (912) 478-5541. (tel:(912) 478-5541)

**Georgia State University: (http://counselingcenter.gsu.edu)** University Counseling and Testing Center, (404) 413-1640 (tel:(404) 413-1640)

**Georgia Institute of Technology: (www.womenscenter.gatech.edu)** Women's Resource Center, (404) 385-0230. (tel:(404) 385-0230)

**Kennesaw State University: (sss.kennesaw.edu/wrc/violence.php)** Women's Resource and Violence Prevention Center, (470) 578-7858. (tel:(470) 578-7858)

**University of Georgia: (www.uhs.uga.edu/rsvp)** Relationship & Sexual Violence Prevention office (RSVP), (706) 542-7233 (tel:(706) 542-7233) (SAFE).

Additional sexual assault training and prevention resources are available at the Georgia Network to End Sexual Assault. (www.gnesa.org)

For the freshman UGA moved to expel, his case ended up in the courtroom after all – but on the civil docket.

After receiving a letter in November 2012 saying the university found he had "committed sexual assault" his attorney, Kim Stephens, filed a motion in Athens-Clarke County seeking a temporary restraining order to allow him to finish out his fall term at UGA. A judge granted the motion and he remained on campus while a lawsuit challenging the constitutionality of the proceedings moved forward.

"There was no hearing, no ability to confront the witnesses against him or even know who they were. There was no due process whatsoever," Stephens said in an interview with the AJC. The student did not respond to requests for comment placed with his parents and Stephens.

UGA handed the lawsuit over to the state attorney general's office. In legal papers, state lawyers argued the process was fair and noted the student chose not to challenge the expulsion ruling by filing an appeal with the school.

But emails obtained by the AJC through an open records request show state lawyers also moved immediately to strike a deal that would make the lawsuit go away.

The settlement allowed the student to exit UGA voluntarily without an expulsion on his public record, according to the case file obtained by the AJC through an open records request. He was banned from attempting to re-enroll in UGA, but other schools looking to admit him would not know of the alleged offense. A UGA spokesman said the deal "ensured that he could no longer be a threat to the UGA community."

Michael Caplan, an Atlanta attorney who represents another student charged with sexual assault at UGA, said he was especially concerned by UGA's policy of not providing an in-person hearing to the accused and allowing a single campus official to investigate and adjudicate, which he said meant there was no independent review of the official's decision.

"We're exposing students to a one-sided process for something that is extremely serious that will follow them for the rest of their lives," he said.



### Billions of federal dollars on the line

In an appeal he filed with the Board of Regents in his own clients' case, Caplan argued the protections spelled out for a basic code of conduct violation, like cheating, are far more expansive at UGA then they are for the more serious violation of sexual misconduct.

For conduct violations such as cheating, there is a detailed account of the protections afforded to the accused student. The policy spells out that the accused must be given a formal notice of charges, told they may have an adviser, informed of all potential witnesses and information that could be used against them, be given a live hearing before three neutral decision makers and permitted to question adverse witnesses.

UGA's non-discrimination and harassment policy governing sexual misconduct complaints is far less specific. It says that the accused must be informed that a complaint has been filed as well as of their right to be interviewed and provide evidence. It also says it will disclose information to others "only on a need to know basis."

Stephanos Bibas, a former federal prosecutor and professor of law and criminology at the University of Pennsylvania, said schools are trapped between competing forces, each of which brings great risk.

"Currently there are dozens of accused, almost all men, suing colleges, and colleges feel like they are whipsawed either way, and there are billions of federal dollars – grants, scholarship dollars – on the line. I think they feel they will get sued whichever way they go," Bibas said.

Bibas was one of 16 University of Pennsylvania law professors who penned a letter to school administrators earlier this year criticizing aspects of Penn's new sexual assault policies for denying due process to the accused. More than two dozen Harvard Law School faculty wrote a similar letter late last year about the due process failures of that institution's policies.

And while these actions reveal a growing backlash to campus proceedings, advocates such as Bivins, with the Georgia Network to End Sexual Assault, say the schools have come a long way toward correcting a problem that has been allowed to fester for decades.

"The (campuses) either weren't prepared and equipped to handle the cases, weren't properly trained and some didn't want the public to know that assaults were happening on their campuses," Bivins said. For the most part, she said, the campuses are now moving to properly address the issue.

### HOW WE GOT THE STORY

Atlanta Journal-Constitution reporters Shannon McCaffrey and Janel Davis began investigating sexual assaults on Georgia college campuses last year as the issue attracted national attention.

Their reporting on a story in December found that prosecutors weren't prosecuting sexual assaults on Georgia campuses, but that some cases were being handled by campus tribunals. The secrecy surrounding the universities' judicial processes made reporting a challenge. The Family Educational Rights and Privacy Act (FERPA) shields most records from disclosure even after cases have been resolved.

The AJC filed open records requests with the largest public universities in the state seeking aggregated data on the number of complaints alleging sexual misconduct and information on how those cases had been resolved. The reporters crosschecked that material with hundreds of campus police reports amassed for the previous story, allowing the reporters to fill in details for cases that had also been investigated by police.

Names and other details for individuals found responsible for sexual misconduct charges were obtained under an exemption to FERPA that permits the release of such information in closed cases.

Through open records requests, the reporters also gained access to records from the state attorney general's office and the Board of Regents, which shed additional light on the secretive process.

In total, more than a dozen open records requests were needed to extract the information for this story, the first detailed look at how the campus justice system operates in Georgia.

The AJC did not name the former University of Georgia student accused by another student of sexual misconduct because he was not charged criminally. Details of his story were obtained through campus police reports, civil case files and records on file with the attorney general's office. The AJC did not name the Emory graduate student because the university found him not responsible of sexual assault and his name did not appear in public records. The student granted reporters permission to review records and verify facts related to his case.

PRESENTATION BY RICHARD L. WATKINS (MAILTO:RICHARD.WATKINS@AJC.COM?SUBJECT=SECRETIVE%20JUSTICE%20LAYOUT)