IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISRICT OF GEORGIA
ATLANTA DIVISION

John Doe,                               )
     Plaintiff,                    )
     V.                            )      1:15-CV-4079-SCJ
The Board of Regents for the            )
University System of Georgia,           )
Et al,                                  **)**
     Defendants.                   )

# DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

## I.  STATEMENT OF FACTS

The Plaintiff, was expelled from the Georgia Institute of Technology on

███████████  as a result of a finding that he was found to have had non-consensual

sexual intercourse with another student.  (Doc. 1 ¶ 1).  Plaintiff complains that the

process by which the Plaintiff was found to be culpable was biased because he

wasn't able to cross examine witnesses against him, be present or be provided with

verbatim accounts of interviews, was generally denied the right to review the

names of persons who provided the evidence until 30 minutes before his meeting

to discuss the allegations, and because the investigation and decision making was

vested in a single University administrator. (Doc. 1 ¶ 4).[1]  Plaintiff also argues that the decision maker had an inherent bias against men accused of sexual assault as evidenced by his contention that he had found against other students who claimed to have been wrongly adjudicated as responsible, the claim that he assigned unnamed students a book to read that cast men in a bad light, and because the investigation in this case was conducted in a biased way.   Plaintiff also claims that the three named Defendants (Peterson, Stein and Paquette) had a particular bias against the Plaintiff ███████████████████████████

██████ .

Plaintiff also claims that Georgia Tech failed to follow its own processes as the Plaintiff's claim was heard beyond the time allowed by the Student Code of Conduct, because the appeal was not heard by an appeal's committee and because the President failed to apply the proper standard.  Plaintiff claims that these deviations denied him due process.  (Doc. 1 ¶ 5).

The Sexual Misconduct Policy utilizes an investigatory rather than an adversarial model and the determination shall be by a "a Preponderance of the Evidence" and requires a "prompt, fair and impartial investigation and resolution" of claims premised upon sexual misconduct.  (Doc. 1 ¶ 27, 28).  The policy dictates

---

[1]  Defendants do not agree that the allegations are true but as this is a motion brought pursuant to 12 (b)(6) Defendants acknowledge that the non-conclusory facts must be accepted as true for  purposes of this motion.

that the investigation and appeal process protects the safety of victims and maintains fairness/impartiality for Respondents and also promises the opportunity for respondents to provide information regarding his/her involvement in the allegation. (Doc. 1 ¶ 28, 29). Regardless of the outcome of the investigation, the alleged victim and respondent may appeal to an Appellate Committee, and again to the President of the University and again to the Board of Regents. (Doc. 1 ¶ 32-35).

In this case the alleged victim (V1) made a report to Peter Paquette on ██████████████. Paquette spoke to the Plaintiff on ████████████. The Respondent provided a written statement as to his account of events after generally being advised of the complaint against him. (Doc. 1 ¶ 57-58). Paquette sent Plaintiff an email seeking further information and again spoke to the Plaintiff on ████████████ relating to the allegations. (Doc. 1 ¶ 62-63). Paquette advised the Plaintiff that he didn't need to interview one of Plaintiff's witnesses because it was not in dispute that ████████████████████. (Doc. 1 ¶ 66). After the initial investigation, Plaintiff was charged with a violation of the sexual misconduct policy. Specifically Plaintiff was charged with having non-consensual sexual intercourse and coercion. (Doc. 1, ¶ 69). Plaintiff was provided a copy of the investigation report. (Doc. 1 ¶ 70). Paquette ultimately sought and received an email from one of Plaintiff's witnesses which stated that ████████████████

3

████████████████████████████████████████████████

████████████████████████████████████████████. (Doc. 1

¶ 79).  Paquette then provided the Plaintiff an opportunity to respond to the formal

charges.  (Doc. 1 ¶ 81).  While Plaintiff was given the substance of the report on

████████ he was not provided with the names of the witnesses until the day of the

interview on ████████ (Doc. 1 ¶ 87).

Plaintiff next contends that the appeals process was flawed on two grounds.

First he complains that his appeal was heard by Dean Stein rather than by a

committee and that based upon the letter sent by the President, the President did

not consider all the factors in reviewing his appeal.  (Doc. 1 ¶ 110, 116).[2]

Plaintiff raises seven claims in his complaint.  Specifically Plaintiff claims

that Defendants violated his right to Due Process (Count 1);  engaged in a Breach

of Contract in failing to conduct a fair investigation (Count II) and breached the

covenant of good faith and fair dealing within the contract (Count III)[3]; violated

Title IX (Count IV) ; violated the Equal Protection Clause (Count V); committed

negligence by failing to properly investigation and exercise due care (Count VI)

---

[2] At the hearing evidence was clearly presented that an Appellate Committee heard Plaintiff's appeal.  Defendants however must presume that the facts as alleged are true.

[3]  Plaintiff dismissed his claims for breach of contract (Counts II and III) at the hearing for preliminary injunction.  Based upon this representation Defendants do not present fact or argument related to these claims.

and finally committed Negligence Per Se based upon the failure to comply with the law (Count VII).

## II. ARGUMENT AND CITATION OF AUTHORITY

### A.    Pleading Standards

To survive a motion to dismiss, a complaint must allege sufficient facts that give rise to a "plausible" suggestion of unlawful conduct. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555-56 (2007). This standard requires more than a sheer possibility that a defendant has acted unlawfully. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 678 (2009). Well-pleaded facts showing only the inference of a possibility of misconduct are insufficient. <u>ADA v. Cigna Corp.</u>, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting <u>Iqbal</u>, 556 U.S. at 681-82).

Conclusory allegations should be ignored, and the remaining well-pleaded facts must plausibly suggest unlawful conduct. <u>Iqbal</u>, 556 U.S. at 678-80. The plausibility standard requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Sinaltrainal Isidro Segundo Gil v. Coca-Cola, Co.</u>, 578 F.3d 1252, 1268 (11th Cir. 2009) (quoting <u>Iqbal</u>, 556 U.S. at 678). If the well-pleaded allegations are consistent with lawful behavior, the complaint must be dismissed. <u>Twombly</u>, 550 U.S. at 570.

The Complaint is replete with conclusory allegations.  For example, Plaintiff's statement that Georgia Tech has motive to discriminate based upon two year old news reports, newspaper reports equate to factual truisms, an appeal of fraternity discipline, that a different result would have occurred upon different practice (Doc. 1, ¶ 118-122,  126, 130, 131).  Plaintiff has no factual support for these factual conclusions and, as a result, is not entitled to any presumption of truth.  See Iqbal, 556 U.S. at 680 (allegation that defendant "knew" of harsh conditions, or that he was a "principal architect" of a policy were properly disregarded as conclusory allegations).   These allegations, and others like them, should not be considered when ruling on this motion.

## B. COUNTS VI, AND VII ARE BARRED BY BOTH ELEVENTH AMENDMENT  AND SOVEREIGN IMMUNITY

Plaintiff alleges that the Board of Regents committed Negligent Acts (Counts VI and VII).  Even if the State of Georgia has waived its immunity in state court, the State has not waived its Eleventh Amendment immunity from such suits in federal court.

"It is well established that, absent an express waiver by the state, the Eleventh Amendment bars state law claims against a state in federal court." Maynard v. Bd. of Regents, 342 F.3d 1281, 1287 (11th Cir. 2003) (Citing and quoting, Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 98-99

(1984).  The Georgia Constitution provides that "[n]o waiver of sovereign immunity . . . shall be construed as a waiver of any immunity provided to the state or its departments, agencies, officers, or employees by the United States Constitution."  Ga. Const. Art. 1, 2, Para. 9(f), reprinted in 2 Ga. Code Ann. (1996 Supp.).

Even if these claims had been brought in the State's courts they would be barred by sovereign immunity.  The Plaintiff has not attached a copy of his ante litem notice to his complaint.  See O.C.G.A. § 50-21-26 (a) (5) (A through F).

## C. PLAINTIFF HAS FAILED TO STATE A VALID CLAIM FOR A VIOLATION OF HIS DUE PROCESS RIGHTS

It is well-founded that "[a] person is not entitled to procedural due process unless he is deprived of an interest in life, liberty, or property. Bd. of Curators, Univ. of Mo. v. Horowitz, 435 U.S. 78, 84 (1978).   The Supreme Court of the United States has also emphasized that "courts should refrain from second guessing the disciplinary decisions made by school administrators." Davis v. Monoe Cty.Davis v. Monoe Cty.,526 U.S. 629, 648 (1999).  Plaintiff provides no reason to deviate from this rule.

Although courts have declined to directly address whether receiving post-graduate education rises to the level of a liberty or property interest, the courts have determined that students enjoy *some* level of due process protection,

particularly where a student is subject to disciplinary penalties.  Bd. Of Curators,
*supra*, 435 U.S. at 86-87. Such protection is limited by the nature and
circumstances of the disciplinary action.  For instance, students "have the right to
respond [to the charges], but their rights in the academic disciplinary process are
not co-extensive with the rights of litigants in a civil trial or with those of
defendants in a criminal trial."  Nash v. Auburn University, 812 F.2d 655, 664 (11th
Cir. 1987) (*citing* Goss v. Lopez, 419 U.S. 565, 583 (1975)).  In addition, "the
adequacy of the notice and the nature of the hearing vary according to an
appropriate accommodation of the competing interests involved." *Id.* at 660
(citations and quotations omitted).  Thus, the student is not necessarily entitled to a
"full-dress judicial hearing, with the right to cross-examine witnesses… [but]
should be given the opportunity to present to the Board, **or at least an
administrative official of the college, his own defense against the charges and
to produce either oral testimony or written affidavits of witnesses in his
behalf**."  Dixon v. Ala. State Bd. of Educ., 294 F.2d 150, 159 (5th Cir. 1961)
(emphasis added).   There is no contention that the Plaintiff was unable to present
his story, his own defense or provide written affidavits on his own behalf.  Indeed
the allegations show the exact opposite.

Plaintiff's Due Process claims fall into essentially three categories.  First, Plaintiff complains that the process that was provided was inadequate.  He suggests that the failure to provide him with the names of the witnesses interviewed, the inclusion of some statements of the witnesses, and the failure to interview other witnesses creates an inadequate protection of his right to attend Georgia Tech. Plaintiff's second contention is that the decision makers in his case were somehow biased against him.  Third Plaintiff contends that Defendants did not follow GA Tech's process in that the alleged victim's claims were heard out of time, the appeal was heard by only one person rather than a committee and the President failed to view his appeal utilizing the proper standard.  Each will be addressed in turn.

Plaintiff's chief complaint regarding the variance in policies is his assertion that the complainant's accusations were untimely.  Both Title IX and GA Tech's policy require a prompt investigation of claims of sexual misconduct. *See* 34 C.F.R. § 106.8 (Title IX regulation requiring  educational institutions to adopt and publish grievance procedures that provide for the "prompt and equitable" investigation and resolution of sexual misconduct allegations); U.S. Dep't of Ed., Office for Civil Rights, 'Dear Colleague' letter (April 4, 2011), available at http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.html.  Among

other things OCR decreed that when a college or University "knows or reasonably

should know about student-on-student harassment that creates a hostile

environment" the college must "take immediate action to eliminate the harassment,

prevent its recurrence and address its effects." *Id.* At 4, 15.  Moreover, the OCR

requires that institutions adopt a preponderance of the evidence standard.  *Id.* at 11.

These requirements were further clarified by the United States' Office of Civil

Rights in the "Questions and Answers on Title IX and Sexual Violence," (Apr. 29,

2014) available at https://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-

ix.pdf.    Neither GA Tech nor the Department of Justice establish a statute of

limitations for such an investigation and resolution of a claim of sexual

misconduct.    Moreover, while Plaintiff concludes that the Student Code of

Conduct applies he has no factual support for this conclusion.  He does cite to the

provisions of the sexual misconduct policy that evidence the requirement that all

complaints of sexual misconduct must be investigated and responded to.  Nowhere

does he suggest that this policy carries a statute of limitation. (Doc. 1 ¶ 28).

Plaintiff's second complaint is that he did not have a verbatim account of the

adverse witnesses but instead had to rely on written summaries of interviews and

that he did not know the identity of the witnesses until 30 minutes before his

meeting with Paquette.  Plaintiff does not allege that these summary accounts were

inaccurate or did not include parts of the witness' statements.  He just generally

complains that he should have had a different form of report.  The reality is he was

given a summary and the opportunity to respond to the summary prior to his final

interview with Paquette.  Absent some evidence that the summaries were

inaccurate or falsified there is no indication that a different mode of presentation

would have altered the scope of his response nor is there any authority to support

that more information is required.

Moreover direct examination is strongly discouraged.  *Questions and*

*Answers on Title IX and Sexual Violence*, OCR states:

Q: May every witness at the hearing, including the parties, be cross-examined?
A: OCR does not require that a school allow cross-examination of witnesses,
including the parties, if they testify at the hearing. But if the school allows one
party to cross-examine witnesses, it must do so equally for both parties.

OCR strongly discourages a school from allowing the parties to personally

question or cross-examine each other during a hearing on alleged sexual violence.

Allowing an alleged perpetrator to question a complainant directly may be

traumatic or intimidating, and may perpetuate a hostile environment.  *Id* at 31.

Plaintiff contends that Georgia Tech failed to follow its own process and as a

result failed to provide process.  Courts have been clear that there is no

constitutional right to policy and that the failure to comply with a state created

policy does not equate to a violation of Due Process.  Davis v. Scherer, 468 U.S. 183, 193-96  (1984).

The threshold question in a procedural due process analysis asks whether the challenged government action deprived the claimant of a liberty or property interest that is protected by the due process clause. Brock v. Roadway Express, Inc., 481 U.S. 252 (1987)(citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538-39, 105 S. Ct. 1487, 1491-92 (1985)); Board of Regents v. Roth, 408 U.S. 564, 576-78, 92 S. Ct. 2701, 2708-10, 33 L. Ed. 2d 548 (1972).  Minimum due process requires that before an individual may be deprived of property he be given notice and an opportunity for a hearing. *See* Mullane v. Central Hanover Bank and Trust Co., 339 U.S. 306 (1950). The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314. Plaintiff does not contend that he was not told of the allegations, the name of the victim or the nature of the potential penalty.  Instead he complains that the investigation was not as thorough as he believed it should be and he thinks his evidence wasn't given appropriate weight.  Yet, by his own admission, he was given an opportunity to make a written statement.  Follow-up was made to clarify the statement, a second call occurred to obtain additional information and a final interview conducted. Plaintiff had notice of the claim and was given ample opportunity to respond.

Moreover there's no allegation that he wasn't given opportunity to provide his own statements to the decision maker of witnesses he believed to have value.  While he contends that the decision maker did not attempt to contact people he thought were important there is nothing to suggest that he wasn't free to provide his own evidence in support of his defense.  The fact that he chose not to do so does not make the process unconstitutional.

Plaintiff's complaint he avers that the process was biased.   A biased decision maker is "constitutionally unacceptable."  Withrow v. Larkin, 421 U.S. 35, 46-47 (1975).  The court may not, however, infer that the Defendants were biased against Plaintiff.  Any alleged prejudice on the Defendants must be evident from the record and cannot be based in speculation or inference. Duke v. North Texas State University, 469 F.2d 829, 834 (5th Cir. 1972).  Here that's all Plaintiff offers.  In a conclusory fashion he avers that the decision makers were biased.  He supports his claim by suggesting that since others were disciplined  that equates to bias.  He provides newspaper articles that conclude that others were treated unfairly and uses this to bolster his conclusory claim but offers no non-conclusory factual allegations to establish that bias existed in those processes or in the case at bar.  Without more factual support this claim cannot survive.

D. **PLAINTIFF FAILS TO STATE A CLAIM FOR A VIOLATION OF THE EQUAL PROTECTION CLAUSE**.

The Equal Protection Clause requires only that "all persons similarly circumstanced shall be treated alike." Plyer v. Doe, 457 U.S. 202, 216 (1982). To establish an equal protection claim, a plaintiff must show that similarly situated persons have been treated differently and that the defendant's actions were motivated by an unlawful factor. Mickens v. Tenth Judicial Circuit, 181 Fed. Appx. 865, 878 (11th Cir. 2006); Walker v. Cromartie, 287 Ga. 511, 512 (2010). In this context, "similarly situated" requires some specificity. Campbell v. Rainbow City, 434 F.3d 1306, 1314 (11th Cir. 2006). The comparator must be similarly situated in all relevant respects. Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1202-03 (11th Cir. 2007).   Even then, equal protection is denied only when the challenged conduct was motivated by an intent to discriminate. Wash. v. Davis, 426 U.S. 229, 239-48 (1976).  Plaintiff does not come close to meeting this standard.   Here, Plaintiff offers no comparator.  While he theorizes that no woman would be subjected to similar consequence he offers no facts to support this theory. There is no allegation that a woman was charged with non-consensual intercourse and treated differently as a result.  Plaintiff's claim has no merit.

14

Further, an equal protection claim also requires a showing that a plaintiff has been the victim of intentional discrimination. Batson v. Kentucky, 476 U.S. 79, 90 (1986). The United States Supreme Court stated in Massachusetts v. Feeney, 442 U.S. 256 (1979) that the requisite discriminatory purpose must be "more than intent as volition or intent as awareness of consequences...It implies that the decisionmaker...selected or reaffirmed a particular course of action at least in part, 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." Id. at 279. (cite omitted) See also, Greene v. Georgia Pardons and Parole Board, 807 F. Supp. 748, 755 (N.D. Ga. 1992)(Plaintiff needs to set forth "exceptionally clear proof" to raise an inference of discriminatory purpose). Plaintiff has not presented any evidence whatsoever that the Defendants intended to discriminate against him. Therefore, Plaintiff's equal protection claim fails.

Finally, in order to prevail on his equal protection claim, Plaintiff must show that the Defendants had no rational justification for their actions. Garrett, 531 U.S. at 366-67. The Defendants may discriminate against Plaintiff if they have a legitimate interest in doing so. Id. at 367. It is incumbent upon Plaintiff, however, to show that there is no reasonably conceivable state of facts that could provide a rational basis for the alleged classification/discrimination, see F.C.C. v. Beach Communications, Inc., 508 U.S. 307, 313 (1993), and he is unable to do so.

15

Under a rational basis review, the Court identifies a legitimate government purpose and determines whether a rational basis exists for the government to believe that its action would further the government purpose.  Heller v. Doe by Doe, 509 U.S. 312, 319-20, (1993); see also Cook v. Riley, 208 F.3d 1314, 1323 (11th Cir. 2000) (holding that the Bureau of Prisons did not violate the Equal Protection Clause by excluding prisoners convicted under § 922(g) from consideration for a discretionary reduction in sentence, because it neither imposed upon a fundamental right nor isolated a suspect class and it rationally furthered the legitimate governmental objective of preventing the early release of potentially violent criminals).

The Defendants had rational reasons for taking action against Plaintiff. First, Plaintiff was alleged to have committed a sexual assault.  The University has an obligation to provide its students with a safe environment.  In fact, the University has a legal responsibility to protect its students from known potential risks of harm.  See Williams, 441 F.3d 1287, 1298 (concluding that the University could be held liable under Title IX where it was alleged that a basketball player, who the University had notice of his prior misconduct, allegedly orchestrated the rape of another student).

The University is on notice that Plaintiff was claimed to have sexually assaulted another student.  If the University had taken no action and a subsequent assault occurred, the University could arguably be held liable.  For these reasons, Plaintiff has failed to show the absence of a rational basis for the alleged discrimination because the Defendants had a significant interest in taking action against Plaintiff.  Therefore, plaintiff's Equal Protection claim cannot survive as a matter of law.

### E.  **PLAINTIFF HAS NOT STATED A VALID TITLE IX CLAIM**.

Title IX to the Higher Education Amendment Act of 1972 provides in pertinent part: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C.  § 1681(a).  The statute itself does not provide for a private right of action.  Nevertheless, the Supreme Court of the United States has implied a private right of action in "certain limited circumstances"—where a recipient of federal funding engages in intentional discrimination that violates the clear terms of the statute,  Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 642-43 (1999).

A plaintiff seeking recovery for a violation of Title IX based on student-on-student harassment must prove four elements: the defendant must be a Title IX funding recipient; an "appropriate person" must have actual knowledge of the discrimination or harassment the plaintiff alleges occurred; a funding recipient acts with deliberate indifference to known acts of harassment in its programs or activities; the discrimination must be so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit.  Williams v. Ga. Bd. of Regents, 477 F.3d 1282, 1293 (11th Cir. 2007). The first element is not in dispute.  As to the remaining element, Plaintiff fails to allege sufficient facts to state a claim.

The crux of Plaintiff's claim is that the process used for investigation of allegations of sexual misconduct resulted in unfair treatment.  He generally complains that the investigation itself was poorly done.  None of the facts as alleged suggest that these, "flaws" were initiated as result of intentional discrimination because of the Plaintiff's gender.   At best Plaintiff's allegations suggest that the process and policies disproportionately impact male students.  This impact is a product of the type of claim addressed not discrimination based on gender.  Simply stated, there is no "disparate impact" claim under Title IX.  While a disparate impact claim may be brought pursuant to Title VII, courts have held

that disparate impact claims may not be brought under Title VI and IX.  Doe v. Columbia University, 2015 U.S. Dist. 52370 *22 (S.D.N.Y. April 21, 2015). [4] The Supreme Court has found there to be a cause of action where a University has actual notice of sex-based discrimination and is deliberately indifferent to it.  Davis v. Monroe County Bd. of Ed., 526 U.S. 629, 633 (1999).  Neither the United States Supreme Court nor the Eleventh Circuit have found that allegations of procedural flaws combined with a suggestion of gender bias give way to a cause of action for erroneous outcomes.  Indeed to do so would arguably cause courts to become the ultimate arbiter in the re-adjudication of claims involving sexual misconduct.

Essentially Plaintiff suggests that the investigation was unfair and resulted in an erroneous outcome.  Assuming for the sake of argument that such a claim exists, Plaintiff fails to tie the outcome to intentional gender based discrimination. Plaintiff makes numerous conclusory allegations regarding theorized motivations, there is no factual support for these conclusions.

Plaintiff suggests that an erroneous outcome was reached in his case and that the punishment was disproportionate to the offense, the issue is whether that outcome and punishment were motivated by sex or gender bias.  See Brzonkala v. Virginia Polytechnic Institute, 132 F.3d 949, 961 (4th Cir. 1994) overturned on

---

[4]  Plaintiff affirmatively states that he is seeking relief from Title IX based upon disparate impact. (doc. 1 ¶ 219).

*other grounds by* Brzonkala v. Virginia Polytechnic, 169 F.3d 820(4th Cir. 1999)(*en banc*); *See also* Yusaf v. Vassar College, 35 F.3d 709, 715 (2d Cir. 1994)(allegations of procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination in not sufficient to survive a motion to dismiss).  Absent some tie of the allegedly erroneous outcome to a gender bias there's no claim.

Here, Plaintiff fails to allege any particular circumstances that show that gender bias was a factor in the allegedly erroneous finding or consequence.  The policy requiring expulsion upon a substantiated finding makes no reference to gender and there is no allegation or suggestion that the investigation would have been conducted differently if the complainant were a man.  Indeed Plaintiff's own evidence suggests that to the extent the investigative process might be flawed this flaw carries to situations where gender isn't an issue. (Doc. 1 ¶ 137-138). Specifically Plaintiff attempts to bolster his claim by offering evidence that the University's investigation of a claim regarding an investigation of a fraternity for the alleged use of racially inflammatory language.  *See http://www.wsbtv.com/news/news/local/georgia-tech-fraternity-suspended-over-yelling-rac/nn3cR/.*  Nothing about that case marginally suggests gender bias.

20

Plaintiff's other scant offerings of gender bias include anecdotal media reports of "unfair" treatment of those who are accused of sexual assault. Plaintiff suggests this unfair treatment stems from inflammatory news reports of Georgia Tech's treatment who claim sexual assault. Plaintiff avers that this unfavorable press caused Georgia Tech to effectively find against men who are accused of sexual assault in order to distance itself as an institution from these reports. (doc. 1 ¶ 209). Assuming these motivations are true, there is nothing about them that suggests gender bias. To the contrary, a University's desire to maintain a positive public image has absolutely nothing to do with gender.

## F. ALTERNATIVELY, THE INDIVIDUAL DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES ARE ENTITLED TO QUALIFIED IMMUNITY

Qualified immunity protects governmental defendants sued in their individual capacities so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). It applies to claims brought pursuant to § 1981 and § 1983. Johnson v. Irby, 403 Fed. Appx. 465, 467 (11th Cir. 2010). In the qualified immunity analysis, the relevant question to be answered is the "objective (albeit fact specific) question," of whether a "reasonable officer" would have believed the defendant's action to be lawful in light of clearly

established law and the information possessed by the defendant.  <u>Anderson v.</u>

<u>Creighton</u>, 483 U.S. 635, 641 (1987).

To avail of the immunity, a defendant must first prove that he was acting

within the scope of his discretionary authority when the allegedly wrongful acts

occurred.  <u>Vinyard v. Wilson</u>, 311 F.3d 1340, 1346 (11th Cir. 2002).  Once this

showing is made, the burden shifts to the plaintiff to show that the law was clearly

established.  *Id.*   Here, there is no dispute but that every Defendant was acting

within his discretionary duty at the time of the alleged acts.  <u>See</u> <u>Holloman v.</u>

<u>Harland</u>, 370 F.3d 1252, 1266 (11th Cir. 2004) (issue is whether defendants were

pursuing a legitimate job-related goal through means that were within their power

to utilize).  Thus, the burden shifts to Plaintiff to establish a violation of a clearly

established constitutional right.

### 1.      The Complaint Does Not Allege a Violation of Federal Law

In determining qualified immunity, the Court must decide whether the

allegations, even if accepted as true, state a claim for violation of any rights

secured under federal law.  <u>Siegert v. Gilley</u>, 500 U.S. 226, 232-33 (1991).  As

discussed above, under <u>Twombly</u> and <u>Iqbal</u>, Plaintiff's Complaint fails to allege

facts sufficient to establish that any Defendant violated any of Plaintiff's federal

rights.

## 2.     No Clearly Established Law Was Violated

Even assuming *arguendo* that Plaintiff had established a federal violation, Defendants are still entitled to qualified immunity because the law was not clearly established.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Brousseau v. Haugen, 543 U.S. 194, 199 (2004) (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)).   Here, Plaintiff's conclusory allegations cannot show that it would have been clear to all educators in each Defendant's position that Plaintiff's federal rights would be violated under these facts.   Indeed there is virtually no law in this Circuit or the Supreme Court of the United States that defines how the Defendants should conduct investigations, impose punishment or otherwise process claims of sexual assault.  Plaintiff has not alleged sufficient facts to establish that Defendants deprived him of any clearly established federal right.  They are entitled to qualified immunity.

## III. CONCLUSION

As Plaintiff has failed to state a claim and because the Defendants are entitled to Eleventh Amendment, Sovereign and Qualified Immunity, Plaintiff's Complaint should be dismissed in its entirety.

Respectfully submitted this 14th day of December, 2015.

SAMUEL S. OLENS                    551540
Attorney General

KATHLEEN M. PACIOUS               558555
Deputy Attorney General

/s/DEVON ORLAND                    554301
Senior Assistant Attorney General

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared in compliance with Local Rule 5.1(B) in 14-point New Times Roman type face**.**

s/Devon Orland
bar no. 554301
Sr. Assistant Attorney General

40 Capitol Square, S.W.
Atlanta, GA 30334-1300
(404) 463-8850 (Telephone)
(404) 651-5304 (Fax)
Email:  dorland@law.ga.gov

## CERTIFICATE OF SERVICE

I do hereby certify that I have this day December 14, 2015 served the within and foregoing **Defendants' Brief in Support of Their Motion to Dismiss** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Christopher Giovinazzo
Justin Dillon

<u>s/ Devon Orland</u>
Bar No. 554301
Counsel for Defendants

Doe v. The Board of Regents of the University System of Georgia et al, Docket No. 1:15-cv-04079 (N.D. Ga. Nov 20, 2015), Court

# General Information

| | |
|---|---|
| **Court** | United States District Court for the Northern District of Georgia; United States District Court for the Northern District of Georgia |
| **Federal Nature of Suit** | Civil Rights - Other[440] |
| **Docket Number** | 1:15-cv-04079 |

Bloomberg Law®

© 2016 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Service