IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JOHN DOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION |
| ) | |
| THE BOARD OF REGENTS OF THE ) | FILE NO. 1:15-CV-4079-SCJ |
| UNIVERSITY SYSTEM OF GEORGIA, ) | |
| G.P. "BUD" PETERSON, *President of* ) | |
| *the Georgia Institute of Technology, sued* ) | |
| *in his official and personal capacities*, ) | |
| JOHN M. STEIN, *Dean of Students and* ) | |
| *Vice President of Student Life at the* ) | |
| *Georgia Institute of Technology, sued in* ) | |
| *his official and personal capacities*, and ) | |
| PETER PAQUETTE, *Assistant Dean of* ) | |
| *Students, Director of the Office of Student* ) | |
| *Integrity & Deputy Title IX Coordinator* ) | |
| *for Students at the Georgia Institute of* ) | |
| *Technology, sued in his official and* ) | |
| *personal capacities*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM IN OPPOSITION TO DEFENDANTS' <u>MOTION TO DISMISS</u>

Although this Court denied Plaintiff's motion for preliminary injunction, the Court also made clear that its "concerns regarding the investigation" that led to Plaintiff's expulsion can only be resolved after a *fact-intensive* inquiry. See Dkt. No. 31 (Dec. 16, 2015, Order) at 37-38. "Much remains," the Court explained, for

1397491.1

its "consideration as to whether Mr. Paquette's investigation veered so far from the ideal as to be unconstitutional." Id.

Fact-intensive inquiries are not suitable for disposition on a motion to dismiss. Instead, only after the parties have conducted discovery can the Court decide Mr. Doe's claims. Among other things, such discovery will provide evidence to support Mr. Doe's allegation that Defendants "did not provide Mr. Doe with an impartial and unbiased adjudicator," Compl. ¶ 179, and that Defendants have taken "aggressive," discriminatory, and unlawful steps "to impose discipline on male students and male-only organizations." Id. ¶ 209. Even without the benefit of any document or other discovery, the Court clearly found these claims plausible after a limited hearing. Mr. Doe respectfully asks that the Court reaffirm that its ruling "does not end the matter," deny Defendants' motion, and allow discovery to proceed. Dec. 16, 2015, Order at 37.

## STANDARD

"In considering a defendant's motion to dismiss, the court accepts the plaintiff's allegations as true and construes the complaint in the plaintiff's favor." Lunsford v. Woodforest Nat'l Bank, 299 F.R.D. 695, 699 (N.D. Ga. 2013) (citations omitted). "Ultimately, the complaint is required to contain 'only enough

1397491.1

2

facts to state a claim to relief that is plausible on its face.'" Id. (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

## ARGUMENT

### I. JOHN DOE STATES A PLAUSIBLE DUE PROCESS CLAIM.

In support of their argument that Mr. Doe has not stated a procedural due process claim, Defendants cherry pick a few aspects of his student disciplinary proceedings and argue that they guaranteed Mr. Doe his right to due process. But a full review of what actually happened is necessary to test this factual assertion. As this Court has explained, "the general nature of due process claims" is that they "are very fact-specific," Dec. 16, 2015, Order at 27—which is why courts frequently refuse to grant motions to dismiss procedural due process claims. See, e.g., Miley v. Hous. Auth. of Bridgeport, 926 F. Supp. 2d 420, 431 (D. Conn. 2013) ("[T]he question of whether [the plaintiff] was afforded procedural due process is a fact intensive inquiry best reserved for summary judgment or trial.").[1]

---

[1] See also Martin v. Kim, No. 2:03 CV 536, 2005 WL 2293797, at *6 (N.D. Ind. Sept. 19, 2005) ("It seems obvious to the Court that such a fact-intensive inquiry is ill-suited for a motion to dismiss, and other court have found similarly.") (collecting cases); Kraebel v. Comm'r of New York State Div. of Hous. and Cmty. Renewal, No. 93 Civ. 4344, 1995 WL 469707, at *6 (S.D.N.Y. Aug. 18, 1995) ("I simply cannot engage in the necessary analysis to make a determination without

Here, Mr. Doe states a plausible claim that Georgia Tech's procedures increased the risk that the outcome of his student disciplinary proceeding was "erroneous." <u>See</u>, <u>e.g.</u>, <u>Mathews v. Eldridge</u>, 424 U.S. 319, 335 (1976) (setting forth the factors to consider in determining what process is due).[2] Even the limited evidence presented to date shows that Defendants' process fell far below that which the Eleventh Circuit or *any* court has previously approved. Moreover, that a state actor like Georgia Tech let one person act as the police, prosecutor, judge, jury, and executioner in his proceeding makes his due process claim all the more plausible. *See* Dec. 16, 2015, Order at 28 ("It seems only logical that the more the investigation and decision-making power is concentrated in the hands of one individual, the more process a court might find is due").

---

further development of the factual record. Defendant's motion to dismiss plaintiff's procedural due process claim is denied.").

[2] Defendants do not address the other factors in the <u>Mathews v. Eldridge</u> analysis—"the private interest . . . affected by the official action" and "the Government's interest including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." <u>Mathews</u>, 424 U.S. at 335. Still, "no one can question that the right to remain at the college in which the plaintiffs were students in good standing is an interest of extremely great value." <u>Dixon v. Ala. State Bd. of Educ.</u>, 294 F.2d 150, 157 (5th Cir. 1961). And Defendants cannot possibly argue that it would be unduly burdensome for them to provide John Doe with the procedural protections the Constitution requires given that, as set forth below, the procedures they failed to provide are commonplace at other state universities.

1397491.1

Defendants' argument that the process alleged by John Doe passes constitutional muster primarily relies on three alleged "facts" about that process: (1) "Plaintiff . . . was [ ] told of the allegations, the name of the victim [and] the nature of the potential penalty"; (2) he was "given an opportunity to make a written statement" and (3) "there is nothing to suggest that he wasn't free to provide his own evidence in support of his defense."[3]  Dkt. No. 29-1 (Defs.' Br. in Supp. of their Mot. to Dismiss the Compl. ("Defs.' Mem.")) at 12-13.  But of course, Mr. Doe disputes these factual claims.  According to Mr. Doe, he did not learn the names of adverse witnesses until it was practically impossible to act on that information without the approval of Mr. Paquette, which Mr. Paquette refused.  *See* Compl. ¶¶ 89-97; id. ¶ 97 (Paquette refused to follow-up on evidence presented by Mr. Doe because he had "done all the investigating that [he] need[ed] to do").  More generally, Mr. Doe plausibly alleges that Defendants repeatedly

---

[3] Defendants' third contention overlooks the numerous allegations in the Complaint that suggest Peter Paquette, the single school official that investigated and adjudicated the claim against John Doe, was unwilling to listen to any of the evidence Mr. Doe put forth.  See, e.g., Dkt. No. 1 (Compl.) ¶¶ 70 ("On March 18, 2015—***before Mr. Paquette had interviewed any of the witnesses proposed by Mr. Doe, including Informant 11***—Mr. Paquette informed Mr. Doe that he was being charged . . . ." (emphasis in original)); 81 ("Mr. Paquette also failed to interview two other critical witnesses."); 98 ("When Mr. Doe's counsel pleaded with Mr. Paquette to interview key witnesses, Mr. Paquette literally laughed at them.").

refused to accept Mr. Doe's evidence, and deliberately ignored the limited evidence Defendants belatedly (and grudgingly) allowed Mr. Doe to provide. Compl. ¶¶ 89-106.

These allegations are more than enough to state a due process claim, and they cannot be fully tested without discovery. This is especially clear because, as this Court has already recognized, "Plaintiff here was not afforded the due process described in Nash [v. Auburn University, 812 F.2d 655 (11th Cir. 1987)] or Dixon [v. Alabama State Board of Education, 294 F.2d 150, 159 (5th Cir. 1961)]," Dec. 16, 2015, Order at 27—the two primary cases Defendants cite in support of their argument that Plaintiff fails to state a due process claim, see Defs.' Mem. at 8.

Where "circumstances move away from Dixon and Nash"—as the Court recognizes occurred in this case—"there is a point on the other end of the continuum where the procedures offered will not be enough to satisfy due process." Dec. 16, 2015, Order at 27. Given that the Court is "greatly troubled by a number of procedural matters in Mr. Paquette's investigation," Dec. 16, 2015, Order at 30, there is no basis for truncating this case and deciding it prior to full discovery. Instead, viewed in the light most favorable to Mr. Doe, his complaint

clearly "allows the court to draw the reasonable inference," Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009), that Defendants' procedures violated due process.[4]

## II. JOHN DOE STATES PLAUSIBLE TITLE IX AND EQUAL PROTECTION CLAIMS.

Defendants likewise try to avoid the fact-intensive inquiry, which this Court has already previewed,[5] that John Doe's claims under Title IX and the Equal Protection Clause will require. Defendants argue that these claims should be dismissed because Mr. Doe "fails to tie the outcome [of his student disciplinary proceeding] to intentional gender based discrimination." Defs.' Mem. at 19.

But of course, discovery is precisely what will allow Mr. Doe to prove that plausible claim. Indeed, Mr. Doe's allegations are precisely the sort that other courts have found to support plausible claims of university discrimination. See, e.g., Yusuf v. Vassar College, 35 F.3d 709, 715 (2d Cir. 1994) (denying motion to dismiss because allegations of "patterns of decision-making," "statements by members of the disciplinary tribunal," and "statements by pertinent university

---

[4] Defendants also do not address Mr. Doe's allegation that he was denied a fair and impartial decision maker ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. See, e.g., Compl. ¶ 179. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ requires further factual development.
[5] See Dec. 16, 2015, Order at 35 ("some of the information in the newspaper accounts will be challenged factually"; "there will likely . . . also be some dispute about whether gender was a 'motivating factor' in his findings").

1397491.1

7

officials" can "tend to show the influence of gender" in producing an erroneous outcome). As in Yusuf, Mr. Doe alleges that Georgia Tech has engaged in a pattern of decision-making that reveals gender was a motivating factor in the school's decision to deny him a fair process.

Here, the plausibility of Mr. Doe's claim is supported by specific factual allegations with respect to Georgia Tech's larger reaction to intense scrutiny it has received regarding the behavior of its male students and male-dominated culture. Compl. ¶¶ 126-32. Analogous claims survived dismissal in Wells v. Xavier University, 7 F. Supp. 3d 746, 747 (S.D. Ohio 2015), where the plaintiff similarly claimed that "Defendants were reacting against him, as a male, to demonstrate to the OCR that Defendants would take action, as they had failed to in the past, against males accused of sexual assault." Id. The Wells court found that the plaintiff's claim survived the defendants' motion to dismiss, explaining that it "puts defendants on adequate notice that he contends they have had a pattern of decision-making that has ultimately resulted in an alleged false outcome that he was guilty of rape." Id. at 752.

Mr. Doe's claim here is even stronger, because he alleges that a specific incident at Georgia Tech—the nationwide publication of a Georgia Tech

1397491.1

8

fraternity's e-mail making light of rape—prompted the school to target males and male organizations through the student disciplinary process. E.g., Compl. ¶¶ 128-32. Mr. Doe points to an investigative report by the *Atlanta-Journal Constitution* that *directly linked* a change in Georgia Tech's policies to the outrage over the fraternity e-mail, such that now "students accused at Georgia Tech [are] almost always found responsible." Id. ¶ 131. And Mr. Doe points to three separate incidents, including his, that illustrate the abusive tactics that the University's Office of Student Integrity has employed against males and male organizations in the wake of the fraternity e-mail scandal. Id. ¶¶ 137-50. If John Doe's alleged facts do not state an "erroneous outcome" claim based on a "pattern of decision making," it is hard to imagine what would.[6]

Likewise, Mr. Doe has alleged that Peter Paquette has endorsed statements that strongly suggest Mr. Doe's gender was a motivating factor in Mr. Paquette's decision. *See* Compl. ¶¶ 133-136. Like Plaintiff's allegations regarding Georgia Tech's pattern of decision making, Mr. Paquette's pattern of conduct can be tested in discovery, which is why similar claims have survived a motion to dismiss. See,

---

[6] The Court has already observed that these allegations "will be challenged factually" by Defendants. Dec. 16, 2015, Order at 35. Until they do so, however, Mr. Doe's allegations must be taken as true.

e.g., Doe v. Washington and Lee University, No. 6:14-CV-00052, 2015 WL 4647996 (W.D. Va. Aug. 5, 2015) ("Washington and Lee").  In Washington and Lee, plaintiff claimed that the defendant's Title IX officer "introduced and endorsed" an article that, according to the plaintiff, "posit[ed] that sexual assault occurs whenever a woman has consensual sex with a man and regrets it because she had internal reservations that she did not outwardly express." Id. at *10.  The court there found that the plaintiff "plausibly established a causal link between his expulsion and gender bias." Id.

Finally, while Plaintiff's Title IX claim may not be wholly congruent with his equal protection claim, for the purpose of the pleading standards on a motion to dismiss, the same allegations that give rise to a plausible claim of gender discrimination under Title IX give rise to a plausible claim of gender discrimination under the Equal Protection Clause.  Cf., Rollins v. Bd. of Trustees of the Univ. of Ala., No. 2:12-CV-2458, 2014 WL 4829540, at *17 (N.D. Ala. Sept. 29, 2014) ("[T]he court will utilize the same analysis for the Equal Protection and . . . Title IX claim[ ]."). Neither of these claims should be dismissed prior to discovery.

### III. QUALIFIED IMMUNITY DOES NOT BAR JOHN DOE'S CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS.

Finally, this Court should deny Defendants' request that all claims against the individual Defendants be dismissed on qualified immunity grounds (Defs.' Mem. at 21). According to Defendants, "there is virtually no law in this Circuit or the Supreme Court of the United States that defines how the Defendants should conduct investigations, impose punishment or otherwise process claims of sexual assault." Id. at 23. But for purposes of Defendants' motion, "'[t]he salient question is whether the state of the law at the time of [the] incident provided *fair warning*' to Defendant that his 'alleged conduct was unconstitutional.'" Harrigan v. Metro Dade Police Dep't Station No. 4, --- Fed. App'x. ----, 2015 WL 9311383, at *5 (11th Cir. Dec. 23, 2015) (emphasis added).

Mr. Doe reasonably alleges that Defendants had fair warning that the process they provided John Doe violated the Constitution. Defendants have not only failed to provide the process approved by the court in Nash, 812 F.2d at 663-65, but the process they provided to John Doe has literally *never* been upheld by *any* court under similar circumstances. Moreover, discovery will potentially shed light on what the individual Defendants did and did not know about the adequacy of their own procedures.

In any event, qualified immunity is a defense only to personal liability for monetary awards resulting from government officials performing discretionary functions; qualified immunity may not be effectively asserted as a defense to a claim for declaratory or injunctive relief.  See, e.g., D'Aguanno v. Gallagher, 50 F.3d 877, 879 (11th Cir. 1995) ("because qualified immunity is a defense only to claims for monetary relief, the district court erred in granting summary judgment on plaintiffs' claims for injunctive and declaratory relief").  Thus, even if qualified immunity applied here, it would not bar Plaintiff's claims against the individual Defendants.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss as to Plaintiff's due process, equal protection, and Title IX claims (Counts I, IV, and V) should be denied.  Plaintiff concedes the dismissal of Count II (Breach of Contract), Count III (Breach of Covenant of Good Faith and Fair Dealing), Count VI (Negligence), and Count VII (Negligence Per Se).

This 11th day of January, 2016.

                                      Respectfully submitted,

                                      */s/ Christopher T. Giovinazzo*
                                      Christopher T. Giovinazzo
                                      Georgia Bar No. 142165
                                      giovinazzo@bmelaw.com
                                      **BONDURANT, MIXSON & ELMORE, LLP**
                                      3900 One Atlantic Center
                                      1201 West Peachtree Street, NW
                                      Atlanta, Georgia 30309
                                      Telephone:  (404) 881-4100
                                      Facsimile:  (404) 881-4111

                                      */s/ Justin Dillon*
                                      Justin Dillon (admitted *pro hac vice*)
                                      jdillon@kaiserlegrand.com
                                      Scott Bernstein (admitted *pro hac vice*)
                                      sbernstein@kaiserlegrand.com
                                      **KAISER, LEGRAND & DILLON PLLC**
                                      1401 K Street NW, Suite 600
                                      Washington, DC 20005
                                      Telephone: (202) 640-2850
                                      Facsimile: (202) 280-1034

                                      *Attorneys for Plaintiff John Doe*

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1**

The undersigned hereby certifies that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1 of the Northern District of Georgia, using a font type of Times New Roman and a point size of 14.

*/s/ Christopher T. Giovinazzo*
Christopher T. Giovinazzo
Georgia Bar No. 142165

1397491.1

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of January, 2016, I electronically filed the **MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the attorney of record for Defendants.

> */s/ Christopher T. Giovinazzo*
> Christopher T. Giovinazzo
> Georgia Bar No. 142165

1397491.1